IN THE

# United States Court of Appeals

FOR THE FEDERAL CIRCUIT

Case No. 21-147

IN RE: APPLE INC.,
*Petitioner.*

On Petition for Writ of Mandamus to the
United States District Court for the
Western District of Texas
No. 6:20-cv-00665-ADA, Hon. Alan D. Albright

## BRIEF OF UNIFIED PATENTS, LLC
### AS *AMICUS CURIAE* IN SUPPORT OF APPLE INC.'S
### PETITION FOR WRIT OF MANDAMUS

Jonathan Stroud
UNIFIED PATENTS, LLC
P.O. Box 53345
Washington, DC 20009
(202) 805-8931

Yusuf Esat
JENNER & BLOCK LLP
353 N. Clark St
Chicago, IL 60654
(312) 222-9350

Adam G. Unikowsky
Alexander J. Hadjis
Krystalyn Kinsel
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
(202) 639-6000

Counsel for *Amicus Curiae* Unified Patents, LLC

## CERTIFICATE OF INTEREST

**(1) The full name of every entity represented in the case by the counsel filing the certificate.**

Unified Patents, LLC

**(2) For each entity, the name of every real party in interest, if that entity is not the real party in interest.**

None/not applicable.

**(3) For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock.**

Parents:
UP HOLDCO INC.
Unified Patents Holdings, LLC
Unified Patents Acquisition, LLC
Unified Patents Management, LLC

No such public companies

**(4) The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and (A) appeared for the entity in the lower tribunal; or (B) are expected to appear for the entity in this court.**

None/not applicable.

**(5) Other than the originating case number(s), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.**

None/not applicable.

**(6) All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases.**

None/not applicable.

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. ii

IDENTITY AND INTEREST OF AMICUS ............................................1

SUMMARY OF ARGUMENT ................................................................2

ARGUMENT ...........................................................................................3

I.   The District Court Erred in Discounting the Convenience of Apple Witnesses. ........................................................................................3

    A.   The convenience of party witnesses should be given meaningful weight, not marginalized, in the transfer analysis....................5

    B.   The possibility of telework does not mute the witness inconvenience. .......................................................................7

II.  The District Court Erred in Determining That Availability of Compulsory Process and Convenience for Non-Party Witnesses Favored Transfer...........10

    A.   Courts should give little weight to marginally relevant witnesses..........10

    B.   Courts should weigh the convenience of important third-party witnesses without regard to attorney promises of compensation for those witnesses. ......................................................................13

III. The District Court Erred in Relying on a Comparison of the Time to Trial in the Two Jurisdictions....................................................................15

CONCLUSION ......................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*,
No. A-09-CA-773-LY, 2010 WL 1170976 (W.D. Tex. Mar. 23, 2010). ............5

*In re Adobe Inc.*,
823 F. App'x 929 (Fed. Cir. 2020) ..........................................................4, 16, 17

*In re Apple*,
818 F. App'x 1001 (Fed. Cir. 2000) ......................................................5

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ....................................................3, 16

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) .........................................................12

*In re Google Inc.*,
2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ......................................4

*In re Microsoft Corp.*,
630 F.3d 1361 (Fed. Cir. 2011) .........................................................11

*In re Toa Techs., Inc.*,
543 F. App'x 1006 (Fed. Cir. 2013) .................................................11

*In re TracFone Wireless, Inc.*,
-- F. App'x --, 2021 WL 1546036 (Fed. Cir. Apr. 20, 2021) ..............5

*In re WMS Gaming Inc.*,
564 F. App'x 579 (Fed. Cir. 2014) ...................................................11

*TC Heartland v. Kraft Foods Grp. Brands*,
137 S. Ct. 1514 (2017)........................................................................8

*Unified Patents, LLC. v. Uniloc USA, Inc. et al.*,
IPR2018-00199 Paper No. 33, 10 (PTAB May 31, 2019) ...................2

**STATUTES**

28 U.S.C. § 1400(b) ...................................................................................8

28 U.S.C. § 1404 ...............................................................................passim

28 U.S.C. § 1404(a) ................................................................................2, 8

**OTHER AUTHORITIES**

Docket Navigator, *Analysis of Patent Litigation in the Western District of Texas* 4 (Jul. 8, 2020) ........................................................................................15

Fed. R. App. P. 29(a)(4)(E)........................................................................1

Fed. R. Civ. P. 45(c)(1)(A) ........................................................................7

Statement of The Honorable Brian Stacy Miller, *The Judicial Conferences Recommendation for More Judgeships* .............................................17

Testimony Before the Committee on the Judiciary, United States Senate 2-3 (Jun. 30, 2020) .................................................................................17

Unified Patents, Q1 2021 Patent Dispute Report ...............................1, 15

## IDENTITY AND INTEREST OF AMICUS[1]

Unified Patents, LLC (Unified) is a membership organization.  Its more than 250 members include Fortune 500 companies, startups, automakers, open-source developers, high-technology companies, industry groups, cable companies, banks, manufacturers, and cybersecurity companies.

Unified studies the ever-evolving business models, financial backings, and practices of NPEs.  Unified monitors ownership data, litigation financing, secondary-market patent sales, demand letters, post-grant procedures, and patent litigation to track NPE activity.  *See, e.g.*, Unified Patents, Q1 2021 Patent Dispute Report,    ("Unified    Q1    Patent    Report")    *available    at* https://www.unifiedpatents.com/insights/2021/3/31/q1-2021-patent-dispute-report.

Unified has also studied the rapid transformation of the Western District of Texas into the leading patent litigation venue in the United States.  *See* Unified Patents, The Rise of the Super NPE and the Western District of Texas (Jul. 13, 2020) ("West    Texas    Report")    *available    at* https://www.unifiedpatents.com/insights/2020/7/13/the-rise-of-the-super-npe.

---

[1] Petitioner-Defendant Apple, Inc. consents to the filing of this brief, while Plaintiff Koss Corporation has not notified *amicus curiae* of its position.  Pursuant to Fed. R. App. P. 29(a)(4)(E), *amicus curiae* states that no party's counsel authored this brief in whole or in part, that no party or party's counsel contributed money that was intended to fund preparing or submitting the brief, and that no person other than the *amicus curiae*, its members, or its counsel contributed money that was intended to fund preparing or submitting the brief.

Unified acts and litigates independently from its members, including Apple, or any other company. *See, e.g.*, *Unified Patents, LLC. v. Uniloc USA, Inc. et al.*, IPR2018-00199 Paper No. 33, 10 (PTAB May 31, 2019) (Unified members not real parties in interest to *inter partes* reviews filed by Unified); *id.* (collecting PTAB decisions).

Unified also has an interest in this case because it concerns a motion for transfer under 28 U.S.C. § 1404(a) — a provision on which Unified's members rely to ensure that cases can be adjudicated efficiently and fairly. Many of Unified's members have offices and facilities located around the world. And many of Unified's member companies have a principal place of business in one district and facilities in another. Unified's members have an interest in avoiding litigation in inconvenient locations with no meaningful relationship to a particular dispute.

## SUMMARY OF ARGUMENT

In this case, Apple was sued in the Western District of Texas for patent infringement. Venue was proper based on Apple's Austin, Texas campus, but all relevant Apple witnesses are in the Northern District of California, and the plaintiff has no Texas ties. Apple moved to transfer the case to the Northern District of California. The district court denied the motion. Apple now seeks mandamus relief.

The district court's § 1404 analysis in this case contained fundamental errors of law. First, it marginalized the convenience of willing witnesses by expressly

attributing "little weight" to Apple's employee-witnesses merely because Apple is a party.  Second, in taking a novel approach to considering the inconvenience of witnesses far removed from a venue, it offered unsupported speculation that Apple's employees could somehow travel to Austin, Texas to telework from Apple's Austin campus.  Third, it held that the availability of compulsory process for a marginally relevant third-party witness, who will almost certainly not testify, "strongly favored" transfer.  Fourth, it disregarded the inconvenience to a California-based inventor witness on the assertion of Koss's counsel that Koss would pay the witness's travel costs. Fifth, it held that setting an early trial date supported keeping the case in Texas despite the enormous tide of patent cases that have flowed into the Waco Division of the Western District.  These holdings resulted in a transfer order for which the strong medicine of mandamus is warranted.

Further, the district court's errors were not case-specific.  Mandamus relief is necessary to ensure that the errors do not recur in future cases, and district courts in Texas and nationwide apply § 1404 correctly.

## ARGUMENT

## I.    The District Court Erred in Discounting the Convenience of Apple Witnesses.

The district court determined that the "convenience of willing witnesses" factor weighed against transfer.  (Op. 21); *see In re Apple Inc.*, 979 F.3d 1332, 1338

(Fed. Cir. 2020) (listing factors in transfer analysis). This conclusion was clearly wrong.

Under this Court's case law, the correct analysis is simple. Neither party's witnesses are in Texas. Apple's key witnesses are in Northern California. Hence, Northern California is more convenient. *See In re Adobe Inc.*, 823 F. App'x 929, 931-32 (Fed. Cir. 2020) (when "Adobe identified a significant number of its own employees as potential witnesses who reside in the Northern District of California," and "[plaintiff's] own employees will be coming from outside both districts," convenience factor favored transfer); *In re Google Inc.*, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) (when "the vast majority of Google's employees—in particular those responsible for projects relating to the accused products—work and reside in the Northern District of California" and plaintiff "has a *single* employee currently residing in the Eastern District of Texas," convenience factor favored transfer).

Yet the district court largely disregarded the inconvenience to Apple's witnesses. It gave two primary reasons: first, the "convenience of party witnesses is given little weight" and second, Apple has a campus in Austin. (Op. 16-19.) Both rulings reflect an abuse of discretion.

A.    <u>The convenience of party witnesses should be given meaningful weight, not marginalized, in the transfer analysis.</u>

The district court asserted that the "convenience of party witnesses is given little weight." (Op. 16.) It cited no appellate precedent for that proposition, and none exists. Instead, it cited a series of district court decisions, leading with *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976 (W.D. Tex. Mar. 23, 2010). (Op. 16-17.)

This Court has previously expressed "concern" with the same district court's "reliance on *ADS Security* for the discordant proposition that the convenience of party witnesses is given 'little weight.'" *In re Apple*, 818 F. App'x 1001, 1003 (Fed. Cir. 2000). In that decision, the Court noted that it had previously "consider[ed] convenience of party and non-party witnesses alike." *Id.*; *accord In re TracFone Wireless, Inc.*, -- F. App'x --, 2021 WL 1546036, at *3 (Fed. Cir. Apr. 20, 2021) ("[T]he district court here clearly misapplied the law in finding that any inconvenience to [third parties] outweighed the convenience of having several party witnesses be able to testify at trial without having to leave home.").

The Court's concern is well-founded. Neither *ADS Security* nor any other district court decision has ever given a logical explanation for *why* the convenience of party witnesses is given little weight. None exists.

There is no reason to disregard the inconvenience to a willing party witness merely because the witness's employer has been sued. Courts are rightfully

concerned about the convenience of non-party witnesses involuntarily dragged into a dispute. But that concern does not justify giving the convenience of party witnesses less weight. Apple, too, has been involuntarily sued. Having made Apple a party in West Texas against Apple's will, Koss cannot claim that the court should ignore the inconvenience to Apple's employee-witnesses because Apple is a party.

Indeed, the convenience to party witnesses should be given elevated consideration in the transfer analysis for two reasons. First, party witnesses are generally more likely to testify. If this case goes to trial, Apple would almost certainly put its own witnesses on the stand. By contrast, litigants frequently identify local witnesses with marginal relevance to the case at the transfer stage with no realistic likelihood that they will actually be called to testify at trial.

This case is a prime example — the non-party witnesses based in Texas identified by Koss are highly unlikely to testify, as described below. (*Infra*, pp. 10-12.) Thus, in denying the transfer motion, elevating the importance of non-party witnesses over party witnesses serves to prioritize the convenience of witnesses who are least likely to testify.

Second, the Federal Rules already protect non-party witnesses from inconvenience. A court may subpoena a witness to attend trial only if the witness works or lives in the state or within 100 miles. Fed. R. Civ. P. 45(c)(1)(A). To elevate the convenience of non-parties over parties in the transfer analysis results in

double-counting. Given that party employees are the only people at risk of involuntarily traveling thousands of miles to attend trial, their convenience should be entitled to the strongest consideration. And, their convenience certainly should not be marginalized.

The primary effect of the district court's "party witnesses" rule is to artificially skew the analysis against transfer. In every § 1404 case, the plaintiff will have chosen the forum and the defendant will be the movant. So, in practice, "inconvenience to party witnesses" must include the "inconvenience to the *defendant*'s witnesses." Disregarding that inconvenience puts a heavy thumb on the scale against transfer.

B.    The possibility of telework does not mute the witness inconvenience.

The district court observed that Apple has a corporate campus in Austin. Its decision also cited websites stating Apple was constructing a new campus. (Op. 18-19.) Based on this, it professed to "strongly believe[] that the convenience of this new Austin facility, along with its existing Austin facilities, greatly minimizes the time that Apple's employees are removed from their regular work responsibilities." (*Id.* at 19.)

The district court's reasoning is novel. Unified is unaware of other courts holding that the inconvenience of travel and the displacement from a person's home

can be mitigated by the possibility of telework.  Its reasoning is also wrong, and the Court should repudiate it.

The district court's reasoning collapses § 1400(b) venue analysis and § 1404(a) transfer-for-convenience analysis.  Venue is proper where the defendant is incorporated or has a "regular and established place of business."  28 U.S.C. § 1400(b); *TC Heartland v. Kraft Foods Grp. Brands*, 137 S. Ct. 1514 (2017).  Here, Apple's Austin campus — a "regular and established place of business" — is the basis for venue.

The transfer-for-convenience analysis, which is separate from the venue question, comes into play only in cases where venue is proper.  Using the presence of a "regular and established place of business" to negate the consideration of willing party witness convenience in a transfer-for-convenience motion would serve to remove the willing witness convenience consideration from the transfer-for-convenience balancing test.

Further, and contrary to the district court's reasoning, the presence of a campus in Texas does *not* establish that it is convenient for Apple's California witnesses to be required to travel over 1500 miles to Texas.  First, the convenience factor is not about having a place to work.  People have responsibilities at home, such as child care.  And travel takes time.  The presence of a campus in another city does not eliminate the inconvenience of leaving home.

8

Second, it is pure speculation that Apple employees' efficiency will not be impaired by working in Austin. These employees live and work in California. And in the experience of Unified's members, remote work is not as straightforward as the district court's analysis suggests. For out-of-state witnesses, the presence of an Austin office does not mitigate the inconvenience of a trial in Waco. Waco is over 100 miles, a two hour drive, from Austin. There is no way witnesses, on the cusp of testifying, could telework from Austin, far from the courthouse. Out-of-state witnesses go to Waco, prepare for their testimony, wait to be called, testify, and depart.

Third, relying on a company's brick-and-mortar presence in an area far-removed from an employee's home to mute inconvenience under the rubric of telework makes no sense when it is considered more closely. Anybody can telework, whether it happens from a hotel, a visiting office in a law firm, or an employer's facilities, far from her workplace. Thus, if the ability to telework were to be considered as the district court has done here, it could be applied to negate the inconvenience every witness experiences when she testifies in a venue far from that person's home.

A Texas trial undisputedly requires Apple's willing witnesses to expend unproductive travel time and spend time away from their families and their workplace. A trial close to home, in this case in Northern California, would not.

9

**II.    The District Court Erred in Determining That Availability of Compulsory Process and Convenience for Non-Party Witnesses Favored Transfer.**

The district court concluded that the case should stay in Texas for the convenience of non-party witnesses. In doing so, the district court focused on a marginally significant witness who will almost certainly not testify. On the other hand, the most important non-party witness — an inventor — is based in California. The district court reasoned that this witness could be ignored because Koss's lawyer represented that Koss would pay his travel costs. This reasoning reflected an abuse of discretion.

A.    Courts should give little weight to marginally relevant witnesses.

The district court concluded that the availability of compulsory process for two Texas-based third party witnesses, Thomas Petrone and Hytham Alihassan, "strongly favored" against transfer. (Op. 13.). That conclusion is incorrect. Both witnesses are, at best, marginally relevant, and weighing them so heavily against transfer prejudiced the outcome.

As this Court has repeatedly made clear, the § 1404 analysis should focus on *material* witnesses, not witnesses with a tangential connection to the case. *E.g.*, *In re Microsoft Corp.*, 630 F.3d 1361, 1363-64 (Fed. Cir. 2011) (granting mandamus and ordering transfer out of Texas when Texas witnesses identified by plaintiff "and are not represented as having any knowledge of the patent or the issues of the suit");

10

*In re WMS Gaming Inc.*, 564 F. App'x 579, 581 (Fed. Cir. 2014) (granting mandamus when local witnesses identified by plaintiff had "largely irrelevant" information); *In re Toa Techs., Inc.*, 543 F. App'x 1006, 1009 n.3 (Fed. Cir. 2013) (granting mandamus when local witnesses identified by plaintiff were unlikely to testify at trial).  Neither witness is material, and, at the very best, they are simply tangential to the case.

Petrone is an IT archivist that even the district court acknowledged was "unlikely to testify at trial." (Op. 13.)  Alihassan, meanwhile, is an engineer who formerly worked for a third party during development of certain software for a Koss product.  (*Id.*)  Neither witness has any knowledge of the patent or the accused products.

The district court's error warrants correction because it rewards a common but troubling tactic in § 1404 disputes — litigants trotting out marginally relevant witnesses that happen to be within the subpoena power of the originating (or transferee) court as a pretext to avoid (or ensure) transfer.  Realistically, there are dozens, if not hundreds, of engineers who worked for a contractor on *some* aspect of Koss's products, and likely *thousands* of engineers who worked for some third party on some aspect of Apple's products.  So why did Koss focus on this seemingly random individual as a potential witness?  For one reason alone, his address.

This tactic is pernicious because it allows litigants to manipulate the § 1404 analysis.  The litigant need not make any commitments that the witness *will* testify.  It need only coyly say that the witness *may* testify.  Then, having used the witness to obtain its desired forum, the litigant is free to say at trial that it has decided not to subpoena the witness after all.

To guard against this tactic, district courts should not consider third-party witnesses unless those witnesses have testimony that is genuinely *material* to the litigation — not merely testimony that might inch past the relevance threshold.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) ("A district court should assess the relevance and materiality of the information the witness may provide."). While a litigant is not required to submit detailed affidavits regarding specific testimony, *id.*, it must at least show through the relevance of that witness's involvement with the case that it is not using a local witness as a pretext to avoid transfer.  If the litigant is using the witness otherwise, then the availability of compulsory process should be given zero weight.

The district court did not assess whether Alihassan's testimony was genuinely material to the litigation or whether he was likely to testify.  Instead, it determined only that Alihassan was a "relevant witness," and, based on nothing more, concluded that the "compulsory process" factor "strongly weighs against transfer."  (Op. 13.) That approach was a clear abuse of discretion.

B.     Courses should weigh the convenience of important third-party witnesses without regard to attorney promises of compensation for those witnesses.

Michael Sagan, an inventor on three of the asserted patents, resides in Northern California.  Inventors almost always testify in patent cases.  Hence, unlike Alihassan, Sagan is a third-party witness who *is* likely to testify.  Yet the district court disregarded both the availability of compulsory process for, and the convenience of, Sagan.  It relied on the assertions of Koss's counsel that Sagan would voluntarily attend trial at Koss's expense.  (Op. 11-12, 21.)  Disregarding Sagan was erroneous.

The court concluded that the inconvenience to Sagan was entitled to little weight because Koss was funding his travel expenses.  Even if Koss's representations were accurate, the district court's reliance on them still reflected an abuse of discretion.

The court should not have considered Koss's offer of funding in its transfer analysis.  Litigants should not be able to skew the transfer analysis by offering money to witnesses and then disclosing those offers to the court.  This analysis creates troubling incentives.

For instance, the district court's analysis suggests that it would have been in Apple's strategic interest to offer the two Texas witnesses a fully-paid trip to California.  Ordinarily this would be perceived as an improper effort to bias the

witnesses. But if the court's decision stands, it will be a legitimate mechanism to skew the outcome of a transfer motion. The court should not uphold a decision that effectively encourages litigants to make side financial arrangements with third parties.

In addition, the expressed willingness at any one point in time of a remote, material witness to travel a far distance to a venue in which he is not subject to compulsory process in not reliable. That witness may change his mind later, for numerous unforeseeable and foreseeable reasons, and may refuse to appear at trial.

The district court also should not have accepted counsel's "representation" that Sagan would testify in Texas at Koss's expense. It should have required evidence, in the form of a declaration.

This is not a mere technicality. Declarations signed by witnesses often look very different from "representations" filtered through their lawyers. If Sagan had provided a declaration, he may well have been less certain about his intention to attend trial voluntarily, or less certain that he could travel at the time of trial, than counsel's assertions indicated.

Koss's counsel is evidently in contact with Sagan, so it should have been easy to provide a declaration. Indeed, the fact that Koss's counsel did not do so, and instead chose to bear the risk that his "representations" would be disregarded, strongly indicates that the failure to provide a declaration was strategic.

Instead, the convenience analysis should focus on objective facts such as travel time and distance. Here, Sagan is in Northern California and he is subject to compulsory process there, so Northern California is more convenient for Sagan. No equivalently important non-party witness is in Texas. Thus, the convenience of non-parties strongly favors transfer. The district court abused its discretion in holding otherwise.

## III.    The District Court Erred in Relying on a Comparison of the Time to Trial in the Two Jurisdictions.

Plaintiffs now file one-quarter of all U.S. patent cases in the Western District of Texas. *See* Unified Q1 Patent Report. To be precise, 233 of the 937 new U.S. District Court patent cases were assigned to a judge in the Western District during the first quarter of 2021. *Id.* Two hundred thirty-three is an astounding number of cases in three months, given that only 120 patent cases were filed in the Western District in 2016 and 2017, combined. *See* Docket Navigator, *Analysis of Patent Litigation in the Western District of Texas* 4 (Jul. 8, 2020) ("Docket Navigator Report") *available at* https://brochure.docketnavigator.com/analysis-of-patent-litigation-in-the-western-district-of-texas/.



Despite this vast growth, the district court concluded that the court congestion factor weighed against transfer. (Op. 25.) Koss argued that the Waco Division's Order Governing Proceedings would lead to a more expeditious trial, and that trial was thirteen months away. (*Id.*) The Court deemed itself "convinced by Koss's assessment of the respective time to trial of WDTX and NDCA." (*Id.*)

This reasoning is directly contrary to a recent, precedential decision of this Court. In a case involving the same transferor and transferee districts and the same defendant, the Court stated: "[A] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *Apple*, 979 F.3d at 1344; *accord Adobe*, 823 F. App'x at 932. "Indeed, a district court cannot merely set an aggressive trial date and subsequently conclude, on that basis alone, that other forums that historically do not resolve cases at such an aggressive pace are more congested for

venue transfer purposes." *Id.* This is particularly true where, like here, the forum itself has not historically resolved cases so quickly." *Id.* Mandamus is warranted when, as here, a district court disregards circuit precedent.

In addition, the number of patent cases in the Waco division exceeds that number for the entire Northern District of California. (Pet. 33 (citing Appx219).) The decision below discounts, but does not question, the relevance of this discrepancy. (Appx25-26.)

The Judicial Conference appears to agree. *See, e.g.*, Statement of The Honorable Brian Stacy Miller, *The Judicial Conferences Recommendation for More Judgeships*, Testimony Before the Committee on the Judiciary, United States Senate 2-3 (Jun. 30, 2020) (detailing the Judicial Conference's April 2020 request for seven new judgeships for "a subset of courts that are in extreme need" including the Western District of Texas)[2]. When Senator Feinstein asked "which district courts are in greatest need of additional judgeships?" Judge Miller began his answer with "The Western District of Texas," which was one of eight courts (not including NDCA) that "require immediate action." *See* Miller Responses To Questions For The Record 3, Feinstein Question 4b. When Senator Tillis asked for a list of districts with above-average weighted caseloads, Judge Miller placed the Western District

---

[2] Testimony available at https://www.judiciary.senate.gov/meetings/the-judicial-conferences-recommendation-for-more-judgeships.

well above the Northern District of California using data from fiscal 2018. *Id.* at 14, Tillis Question 1. Doubtless the gap has increased with the continuing surge of patent cases into Waco, in the two-plus years since that data was collected.

## CONCLUSION

The petition for writ of mandamus should be granted.

Dated:  May 24, 2021                                    Respectfully submitted,

                                                       */s/ Alexander J. Hadjis*

Jonathan Stroud                              Adam G. Unikowsky
UNIFIED PATENTS, LLC                         Alexander J. Hadjis
P.O. Box 53345                               Krystalyn Kinsel
Washington, DC 20009                         JENNER & BLOCK LLP
(202) 805-8931                               1099 New York Ave. NW Suite 900
                                             Washington, DC 20001
Yusuf Esat                                   (202) 639-6000
JENNER & BLOCK LLP
353 N. Clark St                              Counsel for *Amicus Curiae* Unified
Chicago, IL 60654                            Patents, LLC
(312) 222-9350

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. Cir. R. 21(e) because the brief contains 3,749 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman Font.


/s/ Alexander J. Hadjis

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of May, 2021 a true and correct copy of

the foregoing Brief was served via the court's CM/ECF system.

A copy of the foregoing will be served upon the following counsel of record and the

district court judge via FedEx:

Darlene F. Ghavimi
K&L GATES LLP
2801 Via Fortuna, Suite #350
Austin, TX 78746
Telephone: (512) 482-6919
darlene.ghavimi@klgates.com

Benjamin E. Weed
Philip A. Kunz
Erik J. Halverson
Gina A. Johnson
James A. Shimota
Amanda C. Maxfield
K&L GATES LLP
Suite 3100
70 W. Madison Street
Chicago, IL 60602
Telephone: (312) 327-1121
benjamin.weed@klgates.com
philip.kunz@klgates.com
erik.halverson@klgates.com
gina.johnson@klgates.com
jim.shimota@klgates.com
amanda.maxfield@klgates.com

Peter E. Soskin
K&L GATES LLP
Suite 1200
4 Embarcadero Center
San Francisco, CA 94111
Telephone: (415) 882-8200
peter.soskin@klgates.com

Michael T. Pieja
GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP
200 South Wacker Drive, 22nd Floor
Chicago, IL 60606
Telephone: (312) 681-6000
mpieja@goldmanismail.com

Melanie L. Bostwick
Elizabeth R. Cruikshank
Monica Haymond
Orrick, Herrington & Sutcliffe LLP
1152 15th Street NW
Washington, DC 20005
Telephone: (202) 339-8400
mbostwick@orrick.com

Hon. Alan D. Albright
United States District Court for the Western District of Texas
800 Franklin Avenue, Room 301
Waco, Texas 76701
Telephone: (254) 750-1510

/s/ Alexander J. Hadjis